Yes, your honor. Thank you. May it please the court, Michael Conger on behalf of the plaintiff and appellant Janet Wood. This case is about the City of San Diego's maintenance of a deferred compensation policy that adversely affects women. You already know my question because I asked it in the wrong place. Judge Kleinfeld, I understand there's a question. He's going to give you a Lozado question right now. Your expert had to make some assumptions and one of them was that the employee is married, which of course had to be made to compare married to not married at the time of retirement. And another one was that the spouse is four years older than the retiring spouse and that one doesn't really matter to this case, although it's unknown and will affect the number. And the third one really does, and that is that the spouse, that the male spouse survives the female retiree. That strikes me as something that is an entirely conjectural, speculative possibility. There's no way that Wood could say if I was married when I retired, my husband would have survived me. So how do we show injury? Right. So how do you show injury to Wood as opposed to female single retirees as a class? Yes, sir. And we're speaking here of Mr. Valdez. It's also incidentally kind of on its face not that plausible an assumption since males usually pre-decease females. Yes, Your Honor. We're talking here about Mr. Valdez, who was one of six different ways on the record that we showed there's a payout disparity. And here's exactly how that works. To use what the city said in its last oral argument, Judge Smith was there on March 8, 2007. On the nanosecond of retirement, the married person gets a benefit. I'm going to use a blue pen. And the unmarried person gets a red pen. The married person's benefit, so in this case what Valdez is trying to measure to show there's a quantifiable injury, the married person's benefit costs, for the sake of discussion, double. Okay? And what it is, it's a life insurance policy. On the nanosecond of retirement, the city says if you're married, we're going to pre-fund and pay for a life insurance policy for you. I understand that argument. My problem is really, well, it's kind of the flip side of the Supreme Court decision in Manhart. There, the men could show they were discriminated against as a class because the females outlived the males. And the Supreme Court said, well, that doesn't matter. A particular man has to show that he's discriminated against. And this one seems like the flip side of it. It doesn't matter that female retirees as a class are getting a package a little less valuable if the assumption is made that the husband would stay married and the husband would survive them. But there's no way that Wood could say that if I had been married when I retired, my husband would have survived me and my package would have been worth more. Wood can say that my package would have been worth more because when you buy a life insurance policy, which everybody in this room has done, you pay a premium for it. And the value of that, that a willing buyer and seller pay, is not whether you die that year. The value is what you pay. And the cost of that policy that married people get has a quantifiable excess policy. It's like giving married people a gold watch and giving unmarried people a Timex watch, say. They're at a different monetary cost. And all we did with Mr. Valdez, all we did, Your Honor, was take it completely outside of the pension system, go to the private sector, and ask an annuitant, annuity expert, if you just on that day, using the exact same assumptions that the pension system uses, that's where we got the assumptions, we didn't make them up, what's the difference in the value to buy a benefit with the refund of your employee contributions and a benefit with this life insurance policy? And he's measuring that difference and putting a number to it as a one way of six to show there's a quantifiable actual injury. And that's, so to answer your question, Your Honor, the value of a life insurance policy isn't, or an automobile insurance policy, or a health insurance policy, isn't if there's a claim that year. It's what the premium costs to buy that policy. And that's where the disparity comes in. Let me switch to a slightly different thing from the standing issue. As I read the record, it appears that the district court dismissed the complaint because you didn't adequately allege disparate treatment because you couldn't allege any facts demonstrating that the city of San Diego had deliberately adopted the surviving spouse benefit in order to discriminate based on vendors. Isn't that a key element of a successful disparate treatment complaint in this setting? Well, he used the wrongs. It is with a lesser standard than the ADEA standard of the Hazen paper case used by the court. But, again, go back to Manhart or to Norris, which are both cited in our complaint. Both were treatment cases, Judge Smith. Right. Both. And in one case, the District of Water and Power in Manhart, and in the other case, the state of Arizona, they didn't say, we don't like women or men and there's no animus required. No, I understand that. It was a treatment case. But doesn't there have to be an allegation that there was an intention, whether there's animus or not, to treat genders differently? Yes, and there was, and we have that in the record. In the complaint? Yes. Where in the complaint? In the complaint. The first admitted complaint is in, Your Honor, Judge Smith, it's in volume 9 of the record. I've got it right here. What's the ER reference? It's 1728 is the beginning of the complaint. Yeah, that's the beginning. Where's your allegation? The specific allegation is at paragraph 1730 at paragraph 10, lines 13 and 14. We set forth the difference in the contributions, and we say the city knew that males would receive their surviving spouse continuance benefit far more frequently than females because the contribution rates for males were so much higher than the contribution rates for females. And here's what we have. Norah says the right to participate in a pension is a term and privilege of employment. And so to make it simpler for analysis, the city in 1971 says we're going to let married people have an extra 401K plan and unmarried people not. And since men get it so much more, we're going to make them pay more, three and a half times more. And that's the same type of policy that was intentionally adopted in Manhart. Okay, I just want to be sure I understand. So I'm looking at this part. I see your allegation up at the ordinance. I see the membership classification. And then you say the city knew that males would receive the SSCB far more frequently than females because the contribution rates for males were so much higher than the contribution rates for females. From your perspective, does that meet the requirements that the case law, particularly the Supreme Court, says that we have to show in order to say that the city intentionally tried to discriminate against people? This seems like a passing reference that they knew this, but it doesn't say that the city intentionally discriminated against females. Is that necessary? Well, Your Honor, there is a paragraph here, and I apologize for not having it at the tip of my tongue, that says the city discriminated within the meaning of Title VII by adopting a policy knowing that it would have this effect. And, again, where's the reference? That's really important to me because the district court didn't seem to find that. But I'm interested for you to point this out to me. And, Your Honor, absolutely. And that is? Give some examples of what might happen, but I'm looking for the specific allegation that the city intentionally discriminated against women. Right. This was the claim that he dismissed. And that claim, I can quote it. But I'm just looking for the actual paragraph that it violated the Title VII. So you're kind of bootstrapping. You're saying that they violated Title VII, but there's no express allegation saying that the city intentionally discriminated against women. It's paragraph 33. 33. Okay. Page record 1735. Let me get back to Manhart for a second with you. Yes, sir. In Manhart, what happened factually is that the pension fund required women to make larger contributions than men because, as a class, women live longer, so their pensions cost more. Yes. The Supreme Court said that the question was whether the existence or nonexistence of discrimination is to be determined by a comparison of class characteristics or individual characteristics. Then they answered the question. They said the statute makes it unlawful to discriminate against any individual, and they italicized individual with respect to his compensation and so forth, because of the individuals, and they italicized individual against sex. And they say that even though, as a class, women live longer, there's no assurance that an individual woman working for the department will actually fit the generalization. Many of these individuals will not live as long as the average man. So they conclude that the amount charged to males and females for the pension has to be the same, even though they expressly acknowledge that unless women as a class are assessed an extra charge, they will be subsidized to some extent by the class of male employees. Yes. Now, it seems to me that what you are objecting to is precisely the same at a general level as what was objected to in Manhart, a sex difference based on class rather than individual, and it has to fail under Manhart for exactly the same reason as the differential pension contributions did there. No. We're alleging a payout disparity under Norris, not a contribution disparity under Manhart. Why does that distinction make a difference? Because here the payout, the liability is best shown, we believe, with a disparate impact analysis, Judge Kleinfeld, which you wrote in the Fosby-Thompson dissent case in 2001. Is that different from Manhart? Manhart was a disparate treatment case, Your Honor. So in a disparate impact case, we're showing liability because the policy ---- There wasn't disparate treatment, though, in the sense of an intentional discrimination against females. It's a separate theory to answer Judge Smith's question. To answer your question, Manhart says you cannot charge different contributions to get the same benefit even if the math works, basically is what they said. Even if the math works, and we're looking at the ---- Actually, they didn't say even if the math works. They said even if charging the same amount would require males as a class to subsidize females as a class. Because women generally live longer than men. And they said we're looking at the individual. That's what Manhart said. We're looking at the individual, Title VII, not the group. We're not asking to look at the group. We're saying look at Janet Wood for standing purposes. And so we're talking about two ---- If we do look at her, if we do look at her as an individual ---- Yeah. What do we see? What do we see? We see that there's a payout disparity to the Norris payout disparity that falls more harshly on women. The payout disparity is ---- Well, we don't know. When we look at her individually, she may be way better off than if she had been married and had a spousal benefit because she would have paid for the spousal benefit. She wouldn't get the lump sum back when she retired. And her husband might die within a year. Well, and, Your Honor, then that answers your first question. That gets back to what is a life insurance policy worth? They don't give the married person cash. They give the unmarried person cash. They give the married person ---- Well, the life insurance policy is priced actuarially on a class basis, not on an individualized basis. But Manhart has told us that we can't make the decision on a class basis. We have to make it on an individual basis. Manhart said you can't make the contribution decision on an individual basis or on a class basis. Norris said you can't have a payout disparity either on an individual or on a class-wide basis, which was happening in Norris. The exact language in Norris said, this is at page 3498, the classification of employees, classification on the basis of sex, is no more permissible at the payout stage of a retirement plan than at the pay-in stage. This is a Norris classification case. This is a Norris classification case. The payout disparity at the nanosecond of retirement is different for married and unmarried, and that policy falls more harshly on women. And, Judge Smith, that policy was adopted with knowledge it would. And they fixed the Manhart problem in 19---- But, again, I appreciate this is kind of a complex area, as you would agree. But what I'm struggling with here is the fact that there's a great deal of difference between an actuarial calculation by a life insurance company about when people likely die and they make a financial determination that will work for the insurance company versus a city, in this case, that is being accused of intentionally discriminating against women. I kind of find the argument that it's just, you know, you refer to the Title VII as kind of circular. There's got to be a direct allegation that says that there's an intention to discriminate against women, not that they knew that the life insurance premiums might be more or whatnot, not life insurance, but the insurance premiums be more, or the payout more and contributions more, but rather that there is an intention to discriminate. And I'd be interested in any case law that you can point to that would show that, you know, I'm missing the boat on this thing. Well, Manhart and Norris, both work, they intensely adopt a plan, and the plan has the effect of discriminating purposefully treatment intent on a class of people, women in both cases. That's how, so. Okay. I think we have your argument. Do either of my colleagues have more questions? Thank you very much for your argument. Let's now hear from the City of San Diego. Mr. Hopkins. Yes, thank you, Your Honor. David Hopkins for Defendant City of San Diego. The problem that the court, that I hear from the court, at least so far, is the same problem that Judge Anello had, the same problem that Judge Benitez had five years ago, and the same problem that Mr. Conger and I have bantered around about for many years, and that is how can Ms. Wood, as an individual, show any particularized injury as to her? Do you have any case that's closely in point on a similar system? No, Your Honor, and I think that's important because these systems are very common. Joseph Esashenko, one of our experts at pages 765 and 766 of the record, pointed out that just in California, the City of L.A., the City of Fresno have a virtually identical benefit, as does the County of Orange, as does the County of San Diego, a separate entity than the City of San Diego. So you'd like an opinion, assuming it goes your way? Pardon me? You'd like an opinion if it went your way? I think they would like an opinion if it went our way. Okay. All those government agencies, but the question was whether there's been any other challenge, and to pick up on a comment that was made in an earlier argument. Any precedent is actually what I was asking for. Pardon me? Any precedent. And there is no precedent, Your Honor, because no one's ever made this remarkable interpretation of this kind of statute. Even Social Security has a very similar benefit. I mean, it's no more remarkable than Manhart, really. Well, I think it's much more remarkable than Manhart and Norris, and this is not a Norris case, Your Honor. In Norris, what happened was that the females were receiving a monthly retirement benefit every month that was less than the males because they lived longer. And the Supreme Court said, oh, no, there's an immediate injury. Here you don't have a cognizable injury to any single retiree. As a matter of fact, the same thing. So Norris, an individual woman, got less money. Yes. Yes. But not in our case. In our case, actually, the single person gets more money at the time of retirement, gets a benefit that the married person doesn't get. Then the question becomes whether maybe that married person catches up at the end of the day, and maybe so. And the Supreme Court, of course, when standing is involved, they rarely get to the merits of the case. In this situation, if we were to agree with the lower court, we would get no farther than standing. Is that a correct analysis? Your Honor, I think that's an analysis from a technical legal perspective. That's what we worked with. But I understand. But I do not believe that we will see another plaintiff, if that's what you're looking at. No, I'm just saying, for purposes of our job, if this is so speculative that it doesn't satisfy Lujan or any of the other standing statutes, can we even get past that? I know we can deal with the standing issue and say, in these circumstances, it doesn't get any farther because it doesn't satisfy Lujan. You can't show an actual injury. Can you help me how we would get beyond that? Again, this is all on the assumption, arguendo, that your position is correct. How do we get beyond the standing issue to weigh in on the larger point made by your colleague? I'm sorry. In other words, the merits. On the merits of the case. Yeah. Your Honor, I think the two are intertwined in that when Judge Anello concluded that there was no injury for standing purposes, I think the same analysis applies to there being no injury for Title VII purposes. Title VII, like standing, looks to the individual. That's why we've been talking about Manhart and Norris. Those weren't standing cases. Those were cases on the merits. Tell me if I've got this right. In Manhart, a woman's paycheck is smaller because her pension contribution is bigger. An individual woman's paycheck is smaller. Not just women as a class. In Norris, the woman. Retiree. Let's see. She gets a lower pension, so the check that she gets in the mail, the individual woman's check is smaller. Yes. Correct. You're saying that the single person who retires gets more than the married person. And most of the single people who retire are female. Or a higher proportion of females, rather, are single when they retire. Correct. So she actually gets more money than the married person when she retires. Correct. The only way she works out getting less money than she would if she were married is if the hypothetical husband survived her and they didn't get divorced before he died. Well, there's other factors as well. There are four factors that will help determine whether Ms. Woods' imaginary spouse would have received more money than Ms. Woods received. The imaginary spouse, let's say he has to survive her. Correct. He has to exist, he has to survive her, and they have to stay married, right? Correct. And then the two others are time-driven. The two others are how long did Ms. Woods live? Because the longer she lives, the lower the present value of what the surviving spouse receives. If Ms. Woods dies next week, the week after her retirement, then the surviving spouse gets a very valuable present value because his retirement continuance, that 50% continuance, kicks in immediately. But if Ms. Woods already lived 10 years past retirement, if she lives her life expectancy, which is another 20 years, if she lives out 30 years, that puts that first payment to her surviving spouse way out in the future. So that's factor three, is how long Ms. Woods lives. Factor four is how long then does the surviving spouse live? And only when we know all four of those factors do we know whether Ms. Woods did better or worse than her surviving spouse would have done under this benefit. I'd like to move for a moment, if I could, to this cost argument and the cost of an insurance policy. I would like to ask you another question first, if I might. Is there any statute that authorizes this type of pension plan? FEHA does, under state law. FEHA states that there can't be a, FEHA basically writes Norris out of pension plans. And I wish I could quote you the statute, I can't. We just, Mr. Conger and I just, or I just briefed that, at least in the state court case that followed this one. Mr. Conger, as plaintiff, has filed a state court case on the FEHA claims that were dismissed by Judge Anello for lack of supplemental jurisdiction. And we just briefed that, and I haven't seen Mr. Conger's response to that. The state statute does not address the marital status issue. And I think that we will be arguing there, I know we're arguing there, the same question we're arguing here is, can you prove an individualized injury to Ms. Wood? Getting to the cost issue. First, the city of San Diego doesn't buy annuities. It doesn't go out in the private market, the pension plan doesn't buy annuities. It doesn't go into the private market and buy a single life annuity for one and a dual life annuity. It's a self-insured as an effect. It's basically a fund. All this money is going into a fund. There's been some briefing on the question whether the city pays into the fund for this benefit. I don't believe that's relevant. This is a defined benefit plan. The employee is entitled to a specific benefit. How it's funded is a separate question. Just as the city's entitled, I'm sorry, the employee's entitled to their salary, but it doesn't give the employee an interest in any particular tax revenues that are going into the general fund. This is where a defined benefit plan differs from a defined contribution or 401k plan. In a 401k plan, very frequently the employer pays money in to the plan that immediately gets vested into an employee account, and the employee has rights to that. Therefore, it's important to the employee that specific funding be made. That's not so much the case here. Here, the employee gets a specific benefit. Sorry, I lost my train of thought. The cost of the benefit is simply is not the benefit. And so this issue of Mr. Valdez's testimony concerning insurance policies I don't think is the way that you should go or should be important. Back to the standing issue, a case that I think is appropriately looked to here is a case that we cited in the lower court, but not here, and had we known, Your Honor, that you were on the panel, Judge Fletcher, we would have cited it, and it's Scott versus Pasadena Unified School District, which was a standing case dealing with contention that the school district was providing perhaps a magnet program for certain students, and there were race and income level classifications that went into who got into that program. And the parents sued. And this is not on all fours because it was a future harm case. Judge Fletcher said no standing, the parents don't have standing, because they cannot show any direct injury, and the injury must be both real and immediate, not conjectural or hypothetical. And that's at 306 F3rd 646 at page 656. That's a 2002 opinion. Now, again, that was a future injury, but Judge Fletcher's quote or the quote from the opinion is that the injury or threat of injury, so she broadened the analysis to include not just a future threat but the current injury. Here, Ms. Woods simply cannot show an injury that is non-conjectural, non-speculative, non-hypothetical. That's what Judge Enel found, and we hope that the city hopes you will find the same. And I think the cities of Fresno, L.A., and the counties of San Diego and Orange hope so, too. If there are no further questions. Yeah, we're no further. Thank you. You used up your time. We're going to give you a minute because this is a complex case, but just a minute, okay? Thank you, Your Honor. Okay. Just real quickly, and really to Judge Kleinfeld, assume that the city has a policy, a practice. White Caucasians get an annuity of life insurance policy, and African Americans do not. Would you say there's no standing because an annuity of the life insurance policy has no value and we don't know what's going to pay out? And, of course, you wouldn't, and that's the issue here. Does the annuity have value and it's measured on the exact nanosecond of retirement? That's the date of valuation, not contingencies later, because all married people get it, and all married people don't. The city just used the word intertwined. That's an important concession because that tells us we're applying a summary judgment standard, not a 12B1 standard. Married singles, not an invidious distinction like black and white. But the point is, is that all inferences should be drawn in our favor, and here we're talking about can we show injury measured on the date of retirement, and we've tried to show that six different ways on this record. Drawing inferences in our favor, in Ms. Wood's favor, the valuation is different between the two, and she gets the short end of the stick. Thank you very much. Thank you, Your Honor. I appreciate the argument of counsel in this case. The case of Wood v. City of San Diego is submitted. Thank you, gentlemen. We'll next hear argument in the case of Toitcher v. Riverside Sheriff's Association. Mr. Woodson, I believe.
judges: Fletcher, Kleinfeld, Smith